IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-02112-PSF-MJW
(Consolidated with 03-cv-01973-PSF-MJW)

WALKER GROUP, INC.,

    Plaintiff,

v.

FIRST LAYER COMMUNICATIONS, INC.; and
J.E.H. KNUTSON,

    Defendants.

---

## ORDER DIRECTING ENTRY OF JUDGMENT

---

**BACKGROUND**

    This matter was tried before a jury on October 25 through 28, 2005, with the undersigned judge presiding. On October 28, 2005, the jury returned its verdict by answering special interrogatories submitted to it by the Court.

    Prior to the case going to the jury, the Court found that Plaintiff Walker Group, Inc. ("Walker Group") loaned Defendant First Layer Communications, Inc. a total of $1,013,867.70, and that First Layer did not make any loan repayments, that this amount remained outstanding subject to Defendant J.E.H. Knutson ("Knutson") proving by a preponderance of the evidence that the debt had been completely or partially satisfied.

    Also prior to submitting the case to the jury, the Court ruled as a matter of law that Knutson was obligated to Walker Group on its claim for breach of Knutson's

original Guaranty Agreement, which guaranteed up to $500,000 of the debt, but that Walker Group had the burden of proving Knutson's liability on his First Amendment and Second Amendment to the original Guaranty Agreement.

Accordingly, the Court submitted to the jury the following five special interrogatories:

    1.    Has Walker Group proven by a preponderance of the evidence that Defendant Knutson is liable on the First Amendment to the Guaranty Agreement?
    Yes _____   No _____

    2.    Has Walker Group proven by a preponderance of the evidence that Defendant Knutson entered into a Second Amendment to his Personal Guaranty that provided he would repay to Walker Group 29.63% of any amount over $600,000 loaned by Walker Group to Defendant First Layer?
    Yes _____   No _____

    3.    Has Walker Group proven by a preponderance of the evidence that Defendant Knutson is liable on the Second Amendment to the Guaranty Agreement?
    Yes _____   No _____

    4.    Has Defendant Knutson proven by a preponderance of the evidence that Walker Group received value from First Layer assets after First Layer's default in October 2002?
    Yes _____   No _____

If you answered "No," to Question No. 4, write $0 in the blank below Question No. 5, with the foreperson dating and signing this special verdict form.

If you answered "Yes" to Question No. 4, please answer Question No. 5.

>       5.      What was the value of the assets Walker Group received from First Layer reducing the outstanding balances of the loans?
>       $_____

The jury's answers to Special Interrogatory Nos. 1, 2 and 3 were "Yes," thus finding Defendant Knutson liable on both the First and Second Amendments to his Original Guaranty.  The jury's answer to Special Interrogatory No. 4 was also "Yes," thus finding that assets of value were transferred from First Layer to Walker Group. Walker Group counsel urged such a determination and quantified such sum as at least $10,000.  The jury's answer to Special Interrogatory No. 5, asking for such value, was "$173,109.83."

Following publication of the jury's verdict and answers to the special interrogatories, the Court directed the parties to submit briefs on the amount of the judgment to be entered by the Court on the jury's verdict.  On November 7, 2005, the parties submitted briefs as to the amount of judgment that should be entered. On November 10, 2005, both sides filed responsive briefs.

Plaintiff Walker Group argues, essentially, that Defendant Knutson's three guaranties collectively guaranteed the first $600,000 of the amount loaned to First Layer, and 29.63% of any amount loaned over $600,000, resulting in a guaranty of $722,628.99, based on the loan amount of $1,013,867.70.[1]  Walker Group argues that

---

[1]  Walker Group argues that the 29.63% guaranteed by the Second Amendment should be the percentage applied to $1,013,867.70 minus the $600,000 guaranteed by the Original Guaranty and First Amendment, or $413,867.70, resulting in an additional guaranty of $122,628.99.  This guaranty should be added to the $600,000 to arrive at a guaranty amount of $722,698.99, according to Walker Group.

3

because the outstanding balance of the loans to First Layer exceeds the limit of Knutson's liability, even after application of the value of the assets received by Walker Group from First Layer, the amount of judgment against Knutson should be $722,628.99, plus pre- and post-judgment interest.

Defendant Knutson, on the other hand, argues that the $173,109.83 amount found by the jury as value transferred by First Layer to Walker Group should be applied to Knutson's guaranty amount of $722,628.99 on a dollar-for-dollar basis, without regard to the outstanding balance of the loans to First Layer, thereby reducing the amount of judgment to be entered against Knutson to $549,519.16.

**ANALYSIS**

The Court disagrees with both plaintiff and defendant, and finds that the proper amount of judgment should be calculated as follows:

As the Court indicated in its instructions to the jury, the amount of the loans from Walker Group to First Layer totaled of $1,013,867.70.  No payments were made by First Layer prior to First Layer shutting down its business in September 2002.  The jury found, however, that assets valued at $173,109.83 were transferred by First Layer to Walker Group.  This transfer of assets is tantamount to a partial payment.  As Walker Group correctly acknowledges in its post-trial brief, this transfer is credited to reduce the outstanding balance of the loan from Walker Group to $840,757.87.  Walker Group is entitled to judgment in this amount against Defendant First Layer, plus prejudgment contractual interest at the rate of 8% per annum (*see* Promissory Note, Trial Exhibit 2

4

at 2, ¶ 3) from October 10, 2002, the date the note came due, through the date of judgment, and postjudgment interest at the statutory rate.

Walker Group is entitled to judgment against Defendant Knutson pursuant to his three guaranties. Under the Original Guaranty, dated October 10, 2000, Knutson expressly guaranteed "the full and prompt payment or performance of the Obligations." (*See* Trial Exhibit 4 at ¶ 1.) The word "Obligations" is defined in the Original Guaranty as "all sums now or hereafter due to Beneficiary [Walker Group] pursuant to the Note . . . ." (*Id.* at "Recitals"). The Note is defined as the "revolving convertible promissory note" for $500,000 made by First Layer payable to Walker Group (*id.*). The Court thus understands this Original Guaranty to be a joint and several guarantee of payment of any unpaid balance due on the $500,000 note from First Layer to Walker Group.

Under the First Amendment to the Original Guaranty, dated May 16, 2001, the amount of the referenced note was changed from $500,000 to $600,000, and all other terms remained the same (*see* Trial Exhibit 10). The Court thus understands this First Amendment to the Original Guaranty to be a joint and several guarantee of payment of any unpaid balance due on the $600,000 note from First Layer to Walker Group.

Under the Second Amendment to the Original Guaranty, dated September 18, 2001, the recital contained in the Original Guaranty was revised to read "Guarantor desires that Beneficiary [Walker Group] advance to First Layer Communications, Inc., . . . amounts in excess of . . . $600,000[ ] to be evidenced by a revolving convertible promissory note . . . . Guarantor shall be personally responsible for such proportional share of such amounts above [$600,000] as is equal to his/her pro rata capital

5

ownership in First Layer . . . ." Trial Exhibit 11. The Second Amendment stipulates that Knutson's pro rata capital ownership in First Layer is 29.63%. The Second Amendment provides that the other terms of the Original Guaranty remain the same. (*Id.* at ¶ 2). The Court understands that as a result of the Second Amendment, Knutson (and the other guarantors) were severally guaranteeing the "obligation" of First Layer to the extent the obligation exceeded $600,000, and Knutson was thus guaranteeing only his pro rata share, or 29.63% of the additional amount.

As indicated above, the obligation of First Layer that remains unpaid is $840,757.87. That amount exceeds $600,000 by $240,757.87. In determining how much of that sum Knutson guaranteed, "[t]he language employed in a guaranty should have a reasonable interpretation according to the intent of the parties as disclosed in the instrument read in the light of surrounding circumstances and the purpose thereof." *Valley Nat. Bank of Ariz. v. Foreign Car Rental, Inc.*, 157 Colo. 545, 551, 404 P.2d 272, 275 (Colo. 1965). The Court finds that the most reasonable interpretation of Knutson's Second Amendment to his Original Guaranty in light of the surrounding circumstances and its purpose is that he guaranteed 29.63% of the additional amount, or $71,336.56. Adding this sum his joint and several guaranty of the first $600,000 under the Original Guaranty and the First Amendment to the Original Guaranty, Knutson's liability on his three guaranties thus totals $671,336.56. Defendant Walker Group shall have judgment in that amount against Defendant Walker Group on his guaranties of the unpaid obligation of First Layer to Walker Group.

The arguments advanced by Knutson for a dollar-for-dollar reduction on his guaranties based on the jury's determination of the value received from First Layer by Walker Group are unavailing. First, Knutson cites to *Lee v. Yano*, 997 P.2d 68, 75-76 (Ha. App. 2000) for the proposition that "where there is no indication from the creditor or the debtor how the value is to be applied and where the debt is partially secured by a personal guaranty, the value must first be applied to the amounts guaranteed." Knutson Brief at 2. Such a statement appears consistent with the statement of Colorado law that "guarantee agreements are to be strictly construed in favor of the guarantor." *Id.* at 1, quoting *First Interstate Bank of Denver, N.A. v. Colcott Partners IV*, 833 P.2d 876, 878 (Colo. App. 1992). However, here Knutson's obligations as a guarantor in three separate, although related, agreements are clear and unambiguous.

Knutson's other principal argument is that Walker Group conceded at trial that he was entitled to a $10,000 credit on his guaranty obligations based on Walker Group's admissions that it received value in that sum from First Layer, and that amount should be credited to Knutson's debt. As the jury found the actual value to be over 17 times that amount, so the argument goes, Knutson's obligations should be reduced accordingly. Apparently, Knutson is asserting a judicial estoppel argument. However, while judicial estoppel based on representations at trial may well apply to reduce a debt in some circumstances, the concept does not apply here. Walker Group's counsel did admit that his client received value from First Layer of at least $10,000 that reduced First Layer's total loan obligations. However, the Court does not recall Walker Group's counsel calling for a corresponding reduction of Knutson's guaranty obligations based

on such value. Knutson provides no transcript excerpt to support such a contention. It is, therefore, factually if not legally deficient.

In addition to a judgment against Knutson on the guaranteed sums, Walker Group shall be awarded pretrial interest on that amount from the time demand was made upon Knutson to honor his guaranties. Walker Group asserts that demand was made on July 9, 2003, as reflected on Exhibit B to Walker Group's Answer and Counterclaim in Civil Action No. 03-1973. Thus, the judgment against Knutson should bear prejudgment interest from July 9, 2003 until the date of entry of judgment. As the guaranty does not expressly provide a rate of interest, the statutory rate of interest of 8%, found in C.R.S. § 5-12-102(2), applies.

**CONCLUSION**

For the foregoing reasons, the Clerk of the Court is directed to enter judgment in favor of Plaintiff Walker Group on Walker Group's First Claim for Relief in Civil Action No. 04-2112 against Defendant First Layer Corporation in the amount of $840,757.87, plus prejudgment contractual interest at the rate of 8% per annum from October 10, 2002 through the date of judgment, and postjudgment interest at the statutory rate.

The Clerk of the Court is directed to enter judgment in favor of Plaintiff Walker Group on its Second Claim for Relief in Civil Action No. 04-2112, and on its First Counterclaim for Relief in Civil Action No. 03-1973, against Defendant Knutson in the amount of $671,336.56, plus prejudgment statutory interest at the rate of 8% per annum from July 9, 2003, through the date of judgment, and postjudgment interest at the statutory rate.

As stated by the Court's ruling at mid-trial, Walker Group's Second and Third Counterclaims against Defendant Knutson in Civil Action No. 03-1973, sounding in fraud and negligent misrepresentation, are dismissed with prejudice.

As stated by the Court's Order entered on August 12, 2005, Knutson's First and Second Claims for Relief against Walker Group in Civil Action No. 03-1973, claims for declaratory judgment and fraud, are dismissed with prejudice.

In light of the dismissal of both parties' fraud and negligent misrepresentation claims, no taxable costs are allowed to either party under Rule 54(d)(1), F.R.Civ.P. Such a denial, however, is not intended to preclude Walker from recovering costs in connection with enforcement of the obligations as may be permitted under the terms of the Original Guaranty (Trial Exhibit 4 at ¶ 3).  Any application for attorneys' fees or costs of collection shall be filed in accordance with the provisions of the Federal Rules of Civil Procedure.

DATED: November 10, 2005

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge